```
             UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

PODS ENTERPRISES, INC.,

        Plaintiff,

v.                           Case No. 8:11-cv-84-T-33MAP

ABF FREIGHT SYSTEMS, INC.,

        Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to Plaintiff's Motion to Dismiss Counterclaims II-IV and to Strike the Twelfth Affirmative Defense (Doc. # 20), filed on April 18, 2011. Defendant ABF Freight Systems filed a Response in Opposition to the Motion (Doc. # 21) on May 2, 2011. PODS filed a Reply (Doc. # 25) on May 25, 2011. For the reasons that follow, the Court grants the Motion.

### I.   Background

PODS is a Florida corporation that provides mobile storage services, in which a storage container is brought to the customer's home or office; after the customer has loaded the container, it can stay on site or PODS can transport it to a central warehouse. (Doc. # 7 at ¶ 16). PODS holds four U.S. trademarks, including a trademark for the term "PODS" as applied to metal storage containers for the transportation of

goods, the PODS logo, and "PODS PORTABLE ON DEMAND STORAGE" used together with its black-and-white and color logos. (Id. at ¶¶ 11-14).

PODS filed its First Amended Complaint against ABF, a competitor in the moving and storage industry, on January 21, 2011. (Doc. # 7). PODS alleges trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (Count I), unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count II), trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c) (Count III), common law trademark infringement (Count IV), trademark dilution in violation of Fla. Stat. § 495.151 et seq. (Count V), common law unfair competition (Count VI), and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. (Count VII).

PODS alleges that ABF uses the term "pods" throughout its UPACK website (www.upack.com). (Id. at ¶¶ 37-41). PODS asserts that this usage causes the UPACK website to be listed prominently when a consumer searches for the terms "pods" or "moving pods" on Google and other search engines (Id. at ¶¶ 42, 45). Furthermore, PODS alleges that ABF or someone acting in its behalf purchased search keywords related to the "pods" mark on Google, causing a UPACK advertisement to be listed as

-2-

the first sponsored link above the natural search results. (Id. at ¶¶ 46-51).

ABF filed its Answer, Affirmative Defenses and Counterclaims on March 25, 2011 (Doc. # 18). ABF asserts four Counterclaims: cancellation of PODS's registrations (Counterclaim I), common law unfair competition (Counterclaim II), attempt to monopolize in violation of the Sherman Act Section 2 (Counterclaim III), and monopolization under the Clayton Act, the Sherman Act Section 2 and the Florida Antitrust Act of 1980 (Counterclaim IV). ABF argues that the term "pods" is generic, that its use of the term is fair and lawful, and that PODS violated unfair competition and antitrust laws by sending cease-and-desist letters and instigating sham litigation with no reasonable basis for success. (Id. at ¶¶ 16-18).

ABF's Twelfth Affirmative Defense asserts that PODS's "claims are barred under the equitable doctrine of unclean hands." (Id. at 39). Specifically, ABF argues that PODS's conduct constitutes trademark misuse and abuse of process, as well as unfair competition and antitrust violations. (Id.).

PODS filed the instant Motion on April 18, 2011. (Doc. # 20). PODS seeks to dismiss Counterclaims II, III and IV and to strike the Twelfth Affirmative Defense.

-3-

**II.  Legal Standard**

A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint. Whitney Info. Network, Inc. v. Gagnon, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005). On a motion to dismiss, this Court accepts as true all the allegations in the counterclaim and construes them in the light most favorable to the counter-claimant. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the counter-claimant with all reasonable inferences from the allegations in the counterclaim. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the counterclaim] and all reasonable inferences therefrom are taken as true.").

In Bell Atl. Corp. v. Twombly, an antitrust case, the Supreme Court articulated the standard by which claims should be evaluated on a motion to dismiss:

> While a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 555 (2007) (internal citations omitted). A plausible claim for relief must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

A motion to strike is governed by Federal Rule of Civil Procedure 12(f), which provides that the Court may order that "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" be stricken from a pleading. However, a motion to strike is a drastic remedy disfavored by the courts. Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). "A motion to strike will 'usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" Scelta v. Delicatessen Support Servs, Inc., 57 F. Supp. 2d 1327, 1347 (M.D. Fla. 1999) (quoting Seibel v. Soc'y Lease, Inc., 969 F. Supp. 713, 715 (M.D. Fla. 1997)).

"An affirmative defense will only be stricken . . . if the defense is 'insufficient as a matter of law.'" Microsoft Corp. v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 683 (M.D. Fla. 2002) (quoting Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). An

-5-

affirmative defense "is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." Id. "To the extent that a defense puts into issue relevant and substantial legal and factual questions, it is 'sufficient' and may survive a motion to strike, particularly when there is no showing of prejudice to the movant." Reyher v. Trans World Airlines, Inc., 881 F. Supp. 574, 576 (M.D. Fla. 1995) (citation omitted).

## III. Analysis

PODS seeks dismissal of ABF's Counterclaims II, III and IV and to strike ABF's Twelfth Affirmative Defense. As a preliminary matter, PODS asserts that the Counterclaims improperly incorporate all of the allegations of each count in every successive count. Accordingly, the Counterclaims may be dismissed as a shotgun pleading. Whitney Info. Network, 353 F. Supp. 2d at 1211. The Court will address below substantive grounds for dismissal and whether the Court will grant leave to file an amended counterclaim as to each count.

### A. Common Law Unfair Competition

In Counterclaim II, ABF asserts a claim of common law unfair competition. Under Florida common law, a claim for unfair competition must allege "(1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer

-6-

confusion." <u>Centrifugal Air Pumps Austl. v. TCS Obsolete, LLC</u>, No. 6:10-cv-820-Orl-31DAB, 2011 WL 202193, at *3 (M.D. Fla. Jan. 20, 2011). ABF has made no such allegations. Indeed, ABF asserts that PODS "has no objective or subjective basis for believing . . . that consumers are likely to be confused by ABF's use of the term 'pod' or 'pods.'" (Doc. # 18 at ¶ 29).

Instead, ABF argues that PODS filed the instant action in "a sham effort to expand the scope of its trademark rights beyond those granted by law." (<u>Id.</u>). ABF further asserts that this action "constitutes unfair competition and indeed an abuse of process." (<u>Id.</u> at ¶ 31).

In its response to the Motion to Dismiss, ABF cites <u>Microsoft Corp. v. Action Software</u> for the proposition that "lawsuits implemented with the design to gain an unfair advantage over a competing business are a basis for a common law suit for unfair competition." 136 F. Supp. 2d 735, 739 (N.D. Ohio 2001). While that may be the law in Ohio, it is not a viable theory for a claim of common law unfair competition in Florida. Thus, Counterclaim II is dismissed. ABF may amend this counterclaim only if it can plead the required elements of a Florida common law unfair competition claim.

    **B.** **<u>Violation of Section 2 of the Sherman Act</u>**

In Counterclaim III, ABF argues that PODS has attempted to monopolize in violation of Section 2 of the Sherman Act by

-7-

registering the generic or descriptive term "pods," sending cease-and-desist letters to competitors even though their use of the term "pods" was fair and lawful, and filing sham lawsuits against competitors for such fair and lawful use. (Doc. # 18 at ¶¶ 35-36).

Section 2 of the Sherman Act proscribes activities that seek "to monopolize any part of the trade or commerce among the several states." 15 U.S.C. § 2. However, the First Amendment right to "petition the Government for a redress of grievances" immunizes parties who petition the government to achieve anticompetitive outcomes from antitrust liability. See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) (granting antitrust immunity for campaign promoting anticompetitive legislation); United Mine Workers v. Pennington, 381 U.S. 657 (1965) (shielding defendant from liability for efforts to influence public officials with intent to eliminate competition). This immunity is commonly referred to as the Noerr-Pennington doctrine. The Eleventh Circuit has held that Noerr-Pennington immunity extends to litigation. Andrx Pharm., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1233 (11th Cir. 2005). "[E]ngaging in litigation to seek an anticompetitive outcome from a court is First Amendment activity that is immune from antitrust liability." Id. at 1234.

The Noerr-Pennington doctrine has an exception for sham proceedings. Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 516 (1972). "[T]he essence of the sham in California Motor is that the litigant in court or the party before an administrative agency does not really want the relief ostensibly sought from the court or agency." City of Gainesville v. Fla. Power & Light Co., 488 F. Supp. 1258, 1265 (S.D. Fla. 1980). "To prevail on the argument that Noerr-Pennington immunity should be abrogated based on the sham litigation exception, a litigant must establish that: (1) 'the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits'; and (2) the party bringing the allegedly baseless suit did so with a 'subjective motivation . . . to interfere directly with the business relationships of a competitor.'" Andrx Pharm., 421 F.3d at 1234 (quoting Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc., 508 U.S. 49, 62 (1993)).

The Noerr-Pennington doctrine generally immunizes PODS from antitrust liability for filing its lawsuit against ABF. However, ABF argues that the sham exception applies because PODS's lawsuit is objectively baseless. In Counterclaim III, ABF alleges that PODS "has no reasonable basis to believe that it would be successful in a trademark infringement suit to

-9-

enforce the PODS mark against ABF and against ABF's fair and descriptive use of the 'pods' term." (Doc. # 18 at ¶ 40). ABF further alleges that PODS filed suit against ABF for anticompetitive purposes. (Id. at ¶ 41). ABF asserts that PODS "is well-aware that the term 'pods' is generic" and that "ABF's use of the terms 'pod' and 'pods' is and has always been fair and descriptive." (Id. at ¶ 1). ABF argues that despite this knowledge, PODS brought suit against ABF in bad faith. (Id. at ¶ 18).

In its Motion to Dismiss, PODS argues that ABF's "conclusory claims of genericness are irrelevant to the objective reasonableness" of the Complaint, as is PODS's knowledge as to whether the trademarks are generic or have become generic. (Doc. # 20 at 13). In its response, ABF counters that the factual allegations in the counterclaims must be taken as true and that facts known to PODS are relevant. (Doc. # 21 at 6, 9).

ABF offers a number of facts to support its allegation that the "pods" mark is or has become generic. ABF further alleges that PODS is well aware that it "does not own protectable or valid trademark rights to exclusively use the term 'pods' to describe moving storage containers," and therefore concludes that PODS filed the instant action in bad faith. (Doc. # 18 at ¶¶ 11, 18).

-10-

The fact remains, however, that PODS holds four registered trademarks -- indeed, ABF seeks cancellation of the registrations. (Id. at ¶¶ 21-27). Registration of a mark provides the plaintiff with a presumption that the mark is not generic, which may be overcome by proof of genericness. Gulf Coast Commercial Corp. v. Gordon River Hotel Assoc., 508 F. Supp. 2d 1157, 1164 (M.D. Fla. 2007). Even if ABF's allegations ultimately prove that the "pods" mark has become generic, they do not show at this juncture that PODS's lawsuit is objectively baseless. "In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in plaintiff's favor but we are not required to draw plaintiff's inference." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotations and citation omitted). Therefore, the Court finds that ABF has not sufficiently alleged that PODS's lawsuit is a sham.

ABF argues that it "need not present evidence to prove its case in the counterclaims. The Counterclaims allege that Plaintiff engaged in various conduct, including bringing an objectively baseless suit . . . . Nothing more is required at the pleading stage of this litigation." (Id. at 10-11). However, "[w]hat Twombly and Iqbal teach is that where there are other plausible explanations, it is not sufficient to speculate in a complaint." Ciba Vision Corp. v. De Spirito,

-11-

No. 1:09-cv-01343-JOF, 2010 WL 553233, at *8 (N.D. Ga. Feb. 10, 2010). This is particularly true "where the expensive process of discovery in an antitrust suit is at stake." Id.

ABF further alleges that PODS has filed trademark infringement lawsuits against other competitors, at least one of which "ended in settlement where the alleged infringing competitor agreed to an injunction enjoining it from using the generic and/or descriptive term 'pods.'" (Doc. # 18 at ¶ 9). ABF believes that PODS "has had no cases where its claimed right to exclude use of the generic or descriptive term 'pods' was adjudicated on the merits." (Id. at ¶ 10). Accepting these facts as true, the Court finds them insufficient to overcome Noerr-Pennington immunity because they fail to allege a "policy of starting legal proceedings without regard to the merits." Glade Pharm., LLC v. Murphy, No. 1:06-CV-0940-TWT, 2006 WL 3694625, at *5 (N.D. Ga. Dec. 12, 2006). "Saying that [plaintiff] has filed many lawsuits is not the same thing as alleging that [plaintiff] has a policy of filing multiple suits to injure competition." Id.

ABF also asserts that the registration of "pods" as a trademark without disclaiming the generic use of the term constitutes anticompetitive conduct not immunized by the Noerr-Pennington doctrine. (Doc. # 21 at 8). However, the Supreme Court extended antitrust immunity to concerted efforts

-12-

before administrative agencies in California Motor. See City of Gainesville, 488 F. Supp. at 1264 (reviewing the history of Noerr-Pennington). Because the U.S. Patent and Trademark Office is an administrative agency, the act of applying for and registering trademarks is protected by Noerr-Pennington immunity.

Similarly, ABF asserts that the sending of numerous cease-and-desist letters is unprotected by Noerr-Pennington. (Doc. # 21 at 8). However,

> [g]iven that petitioning immunity protects joint litigation, it would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation. . . . If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.

McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1560 (11th Cir. 1992) (internal quotations and citation omitted). Therefore, pre-litigative activity such as sending cease-and-desist letters is also immunized. Atico Int'l USA, Inc. v. Luv N' Care, Ltd., No. 09-60397-CIV, 2009 WL 2589148, at *2 (S.D. Fla. Aug. 19, 2009).

The Court finds that ABF has failed to allege sufficient facts to overcome PODS's Noerr-Pennington immunity. Counterclaim III is therefore dismissed without prejudice with leave to amend.

### C. Monopolization under the Clayton Act, the Sherman Act Section 2 and the Florida Antitrust Act of 1980

In Counterclaim IV, ABF asserts essentially the same allegations as in Counterclaim III -- that PODS knew that the "pods" mark is or has become generic and that ABF uses it fairly and descriptively. (Doc. # 18 at ¶ 49). ABF further alleges that PODS registered its marks, sent cease-and-desist letters to ABF and other competitors, and filed sham litigation to acquire and/or maintain monopoly power. (Id. at ¶ 51). ABF asserts that such conduct violates Section 2 of the Sherman Act and the Florida Antitrust Act, Fla. Stat. Ch. 542. (Id. at ¶ 54). ABF argues that it is entitled to recover treble damages and the costs of its suit pursuant to Sections 4 and 16 of the Clayton Act. (Id. at ¶ 56).

Florida Courts recognize the Florida Antitrust Act as the counterpart to Section 2 of the Sherman Act. Marco Island Cable, Inc. v. Comcast Cablevision of the S., Inc., No. 2:04-cv-26-FTM-29DNF, 2006 WL 1814333, at *11 (M.D. Fla. July 3, 2006). Furthermore, the constitutional protections embodied in the Noerr-Pennington doctrine extend to state laws proscribing anticompetitive activity. See id. at *10 (extending Noerr-Pennington immunity to the Florida Deceptive and Unfair Trade Practices Act). The Court therefore finds that the Noerr-Pennington doctrine also immunizes PODS's activities from

liability under the Florida Antitrust Act, and that ABF has failed to allege sufficient facts to overcome that immunity. Counterclaim IV is therefore dismissed without prejudice with leave to amend.

### D.  Twelfth Affirmative Defense

ABF's Twelfth Affirmative Defense asserts that PODS's "claims are barred under the equitable doctrine of unclean hands." (Doc. # 18 at 39). PODS moves to strike the Twelfth Affirmative Defense because it is "premised on the same antitrust allegations as its antitrust counterclaims." (Doc. # 20 at 17).

"The unclean hands doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" Royal Palm Prop., LLC v. Premier Estate Prop., Inc., No. 10-80232-CV, 2010 WL 3941745 (S.D. Fla. Oct. 6, 2010) (quoting ABF Freight Sys., Inc. v. N.L.R.B., 510 U.S. 317, 329-30 (1994)).

> [T]he Eleventh Circuit has stated that to assert an unclean hands defense, a defendant must satisfy two requirements. First the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct.

Id. (internal quotations and citation omitted).

In trademark infringement suits, the doctrine of unclean hands requires allegations "specifically related to the trademark which is at issue and not collateral to the trademark itself." Immuno Vital, Inc. v. Golden Sun, Inc., 49 F. Supp. 2d 1344, 1361 (S.D. Fla. 1997); see also Coca-Cola Co. v. Howard Johnson Co., 386 F. Supp. 330, 335 (N.D. Ga. 1974) (a court in equity may "deny the enforcement of a trademark to one who has used the trademark, itself, as the vehicle of unlawful antitrust activities"). "Merely because a plaintiff has violated the antitrust laws . . . does not result in 'unclean hands' on plaintiff's part." Coca-Cola, 386 F. Supp. at 337.

Taken as a whole, ABF's allegations in support of its affirmative defense of unclean hands are intertwined with the allegations in its counterclaims -- that PODS engaged in trademark misuse and violated unfair competition and antitrust laws by sending cease-and-desist letters and filing suit. Because those activities are not specifically related to the trademark itself, ABF has not properly asserted an unclean hands defense.

Even ignoring the doctrine of unclean hands, ABF's Twelfth Affirmative Defense is legally insufficient to withstand a motion to strike. ABF argues that PODS's conduct constitutes trademark misuse, abuse of process, as well as

unfair competition and antitrust violations as set forth in ABF's counterclaims. The Noerr-Pennington doctrine applies to affirmative defenses. See Dell, Inc. v. 3K Computers, LLC, No. 08-80455-CIV, 2008 WL 6600766, at *3 (S.D. Fla. Oct. 7, 2008) (finding affirmative defense alleging antitrust liability legally inadequate because of Noerr-Pennington immunity). The Court therefore grants the Motion to Strike.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1) PODS's Motion to Dismiss Counterclaims II-IV and to Strike the Twelfth Affirmative Defense (Doc. # 20) is **GRANTED**.

(2) ABF's Counterclaims II-IV are dismissed without prejudice. ABF may file an amended counterclaim within fourteen days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of October, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record